**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF VIRGINIA**

**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Case No. 1:23-cr-00142** |
| | ) | |
| **v.** | ) | **The Hon. District Judge** |
| | ) | **Leonie M. Brinkema** |
| **MEJIA CUBILLAS, MARIO RODOLFO,** | ) | |
| | ) | **Sentencing: 4/1/25 @ 9 AM** |
| *Defendant.* | ) | |

**SENTENCING MEMORANDUM**

The Defendant, MARIO MEJIA CUBILLAS (hereinafter referred to as "Cubillas"), through his counsel, submits the following memorandum for consideration by the Court at the time of his sentencing. For reasons detailed therein, counsel asks this court to sentence Cubillas to a downward variance from the applicable guideline range, specifically to the ten-year mandatory minimum.

**PROCEDURAL HISTORY**

In September of 2023, Cubillas was indicted by the Government on one count of Conspiracy to Distribute Five Kilograms or More of Cocaine Knowing and Intending and Having Reasonable Cause to Believe that It Will Be Unlawfully Imported into the United States, in violation of 21 U.S.C. §§ 959(A), 960, 963. He was arrested pursuant to that indictment, in Honduras, on May 6, 2024. He was then extradited to the United States in July of 2024. On July 25, 2024, Cubillas appeared in this Court for his initial appearance, and did not contest detention. Cubillas was formally arraigned on his charge on August 6, 2024, and a trial date was set to begin on November 18, 2024.

1

On October 22, 2024, Cubillas changed his "not guilty plea" to "guilty" and entered a plea to the offense as charged in the indictment. His sentencing hearing was initially set for February 18, 2025. It was continued to March 11, 2025 by this Court, *sua sponte.* It was continued once more by request of Cubillas, and is now set to be heard on April 1, 2025 at at 9:00am.  A Pre-Sentence Report was ordered at the time of the plea, and has been filed with the court in advance of the sentencing hearing.

## **BACKGROUND**

*A. Family.*

Cubillas was born on April 17, 1971 in Colón, Honduras, and he is presently 53 years old. Having spent his entire life in Honduras, Cubillas identifies as a Honduran and is a citizen of the country. He is also notably a member of the Garifuna people, a small minority ethnic group in Honduras that consists of people with mixed free African and Amerindian ancestry, numbering roughly around 40,000 members, with a larger number who reside in the United States.[1] See Exhibit 1. They originated in the Caribbean Island of Saint Vincent, and traditionally speak Garifuna, an indigenous language. Like most Garífuna, Cubillas is fluent in Spanish, and having spent his entire life in Honduras, Cubillas hails from a very tight-knit community in his country.

Cubillas is the child of Jose Nolberto Mejia Martinez and Catalina Cubillas. Both his parents are now deceased. Cubillas lost his father when he was 12 years old, when his father suffered a lethal snake bite while working on the family farm. Catalina, his mother, passed away in 2018 due to complications from Parkinson's disease, a progressive neurodegenerative

---

[1] "Garifuna in Honduras", Minority Rights Group. https://minorityrights.org/communities/garifuna-2/, last accessed 3/23/2025.

disorder. She never remarried, choosing to focus on and commit to raising her children. Cubillas still misses his parents greatly; although he came from a poor family, he and his siblings grew up in a loving home with great affection from his mother and father.

Cubillas grew up with four brothers and three sisters: Rosa Adelia Argueta, now 70 years old; Aide Argueta, 62 years old; Carlos Cubillas, 60 years old; Luis Alberto Mejia Cubillas, 58 years old; Gabino Julia Mejia Cubillas, 55 years old; Jose Efrain Mejia Cubillas, 51 years old; and Sulma Nelly Mejia Cubillas, 49 years old. Cubillas also had an additional brother, Petronilio Osorio, who died in a car accident at 28 years old. All of Cubillas' siblings live and work in Honduras, primarily in agriculture, just as Cubillas himself does. Cubillas still maintains close relationships with all his brothers and sisters, and regularly maintained communication with them while he was in Honduras.

Cubillas describes himself and his family as being primarily rural farmers, living off the land. The family plot had been passed down to Cubillas' father from his grandfather.  Both as a child and as an adult, Cubillas cultivated various crops on the family farm, especially growing such things as maize (corn), frijoles (beans), and arroz (rice). These crops were sold mainly to the Honduran government's *molino nacional*, or the national mill, for distribution within the country.

After the death of Cubillas' father, Cubillas' mother Catalina had no choice but to withdraw Cubillas and his siblings from their schooling, in order to have sufficient hands on the farm to cultivate the crops. Cubillas reports that his mother had to partake in very difficult physical labor to make ends meet, but that he and his siblings learned quickly to help her plant and cultivate the land. To this day, Cubillas struggles with reading and writing, even in Spanish, as he never was able to return to formal schooling after his father's death.

Cubillas, who was raised in a large family, now has a large family of his own. Since 2021, he has been and is currently in a relationship with Ms. Rosmery Caseres, 30 years old, with whom he has a 3-year-old child, L.M.C. She and their son live in Honduras, although Cubillas has been unable to see his wife and child since his arrest in 2024.

Cubillas also has additional children from prior relationships. From 2008 to 2021, he was married to Ms. Waldina Lorena Avila, and Cubillas has three children with her: M.R.M., 16 years old; N.L.M., 13 years old; and C.B.M., 8 years old. Ms. Avila now lives in the United States, in Massachusetts, with their son M.R.M. The two daughters live in Honduras, with Cubillas' eldest son, Jose Nolberto Mejia Castellanos, 31 years old.

Jose Nolberto Mejia Castellanos is one of four children Cubillas has with his first relationship partner, Ms. Mirna Lizeth Castellanos, from approximately 1990 to 1999. In addition to Jose, Cubillas is also father to Edwin Adiel Mejia Castellanos, 28 years old; Miriam Mejia Castellanos, 33 years old; and Mirna Lizeth Mejia Castellanos, 26 years old. Other than Jose, his adult children now live in the United States.

Altogether, Cubillas has eight children. When asked by counsel as to why his family was so large, Cubillas explained that, due to the low cost of living in Honduras, and due to large families being the norm between generations, raising a family with many children was not impossible. In addition, Cubillas expressed great affection and love for all his children, noting that with each of his partners, having children was an intentional decision. That said, given his present age and circumstances, Cubillas does agree that at 53 years old, having "only" eight children now is probably for the best, and he does not expect to have any more children. Cubillas takes great pride in his ability to be a parent; he expressly describes himself as being "both

mother and father" to his youngest children, due to his devotion to them, a statement echoed by members of the Garifuna community who know him well.[2]

Prior to his arrest, Cubillas lived for approximately one year in San Pedro Sula, a city in Cortés, Honduras, in an apartment with Ms. Rosmery Caseres and his two youngest daughters. Before that, Cubillas lived in Tocoa, Colón Honduras, with Ms. Avila and their children for about 12 years. As noted previously, Cubillas lived and worked in Honduras his entire life, and he had never been to the United States prior to his arrest.

With respect to his family and medical history, Cubillas reports having experienced no physical or mental abuse while growing up, and other than the notable exception of high blood pressure, his family does not suffer from any acute physical or mental health problems. He has however, developed tinnitus and heartburn following his detention in the United States, for which he is given medication to manage. Cubillas reports that he has never had any issues with substance abuse, with either alcohol or drugs.

B. *Role in Offense.*

Cubillas has no prior criminal history, either in Honduras or in the United States. The present proceedings before this Court represent his first conviction. Pursuant to the Statement of Facts filed in this case, Cubillas worked as a drug trafficker in Honduras, since at least 2015, contributing to the transport and importation of large quantities of cocaine into the United States.

Cubillas explains that he first became involved as a *narcotraficante* when he was 15 years old, roughly 3 years after the death of his father. At that time, a cousin's husband, E.C.,[3]gave Cubillas and his siblings an opportunity to work on E.C.'s farm. E.C. was known as a

---

[2] See letter of support 7, "Public Letter."

[3] According to Cubillas, E.C. passed away during the COVID-19 Pandemic in 2020.

wealthy and respectable patron in Colon, Honduras. Seeing this as an opportunity to earn extra income, Cubillas agreed to work for him. Initially, his duties as a farmhand were legitimate, as E.C. owned many horses and cattle; Cubillas was to keep watch over the animals and ensure their stables were clean.

Once Cubillas had earned his trust, E.C. revealed that he supplemented his legitimate farm income with income gained from assisting drug traffickers. Cubillas, then a young man, felt immense pressure to "accept" work loading drugs from the beach onto local boats for distribution, both because E.C. was a member of his family, and because he was initially afraid he would be killed if he refused. Despite his initial hesitation, Cubillas performed the duties requested by E.C., who considered him a good worker, and in time, Cubillas began to supervise, coordinate, and direct the shipments of cocaine from Columbia (and other countries) into and through Honduras.

With respect to the proceeds Cubillas earned from his illicit activities throughout the years, Cubillas reports having worked solely for the benefit of his family, not to enrich himself. There is no evidence that showed Cubillas was in possession of extreme wealth, luxuries, or other assets one might expect from his activities. Cubillas was paid in cash by his bosses and co-conspirators, usually in Honduran *lempira*, and Cubillas used those payments mainly to provide for his family's needs. He specifically notes that he needed money to ensure his children's needs were met, and to ensure he could pay for his ailing mother's Parkinson's medication. His work for the conspiracy provided more income than his farm on its own could provide.

Cubillas did not create the drug trafficking organization at issue, but rather was assimilated into it gradually. The conspiracy was much greater than himself, involving many individuals both in and outside of Honduras. Many of these men are more dangerous and more

resourceful than Cubillas himself. E.C.'s orders ultimately came from the owners of the cocaine in Columbia, who used Honduras as the channel to smuggle their drugs into Mexico first, then into the United States.

To be clear, Cubillas does not deny that he played an active role in the distribution of cocaine in Honduras. Specifically, he admits to having coordinated delivery and receipt of cocaine to and from Honduras; to hiding large quantities of cocaine on his farm for later distribution; and to delivery of large amounts of cash to and from buyers involved in the trade. As his experience grew, Cubillas also directed other workers to assist him in the transportation and security of the cocaine, although he was never "the mastermind or the boss" of the entire operation, being mainly (along with the other co-conspirators) an important gear in the very large drug trafficking machine. Given the highly dangerous nature of the work, Cubillas acknowledges that he routinely carried weapons about his person, but notes that he himself abhors violence. Contrary to what the public may believe about such activities, Cubillas explains that he was never asked to perform any violent duties, and the government's own evidence does not indicate Cubillas ever performed acts of violence in the performance of his distribution activities.

Honduras is a poor country and opportunities for advancement beyond farm work were extremely limited. Consequently, working for the drug traffickers represented Cubillas' best opportunity to earn a living beyond working crops. Cubillas expresses no pride in his activities, acknowledging them only as a means to an end. He felt pressured to continue down this road of drug distribution, and he also struggled finding other work due to his lack of education. Cubillas is aware that drug trafficking, especially where he is from, is a trade in which one often only "leaves" when one is killed, either by rivals or even by the bosses themselves. Cubillas explains

that he was afraid to leave and risk that danger, for the sake of his family, who depend on him to provide.

**ARGUMENT**

Counsel respectfully asks this court to sentence Cubillas to a downward variance from the sentencing guidelines, and impose only the 10- year mandatory minimum sentence of incarceration required by law. Pursuant to 21 U.S. Code § 960(b)(1)(b)(ii), "the person committing such violation shall be sentenced to a term of imprisonment of *not less than 10 years and not more than life"* (emphasis added).

In <u>United States v. Booker</u>, 543 U.S. 220, 226 (2005), the United States Supreme Court ruled that the sentencing guidelines are simply advisory. It held that imposing a sentence is not just a simple mathematical exercise. While "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines[4], district courts must now make 'an individualized assessment based on the facts presented' after calculating the advisory Guidelines range."[5] The Court held that the guidelines' range is only one of several factors a court must consider when imposing a sentence and that it is legal error to treat those ranges as default sentences.[6]

During sentencing, this Court must also weigh the factors enumerated in 18 U.S.C. § 3553(a), when imposing a sentence:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in

---

[4] <u>United States v. Hughes,</u> 401 F.3d 540, 546 (4th Cir. 2005).

[5] <u>Gall v. United States</u>, 552 U.S. 38, 50 (2007).

[6] See <u>United States v. Mendoza,</u> 597 F.3d 212, 216-17 (4th Cir. 2010); <u>Nelson v. United States,</u> 555 U.S. 350, 352 (2009) (per curiam); and <u>Spears v. United States</u>, 555 U.S. 261, 263-64 (2009).

the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

Taking into account all of these factors, a district judge must "impose a sentence sufficient, but 'not greater than necessary' to accomplish the goals of sentencing.[7]" In <u>Gall v. United States</u>, 552 U.S. 38, 50 (2007), the United States Supreme Court held that courts need not point to "'extraordinary' circumstances to justify a sentence outside the guideline range."[8] A below-guidelines sentence may be appropriate if a district court determines that "the guidelines sentence should not apply, perhaps because (as the guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual guidelines to apply, perhaps because the guidelines sentence itself fails properly to reflect 3553(a) considerations, or perhaps because the case warrants a different sentence regardless."[9] After calculating the total offense level and providing "both parties an opportunity to argue for whatever sentence they deem appropriate, a district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party."[10]

A. *The Nature and Circumstances of the Offense.*

While the greater conspiracy and industry of which Cubillas is a part of is substantial, and the investigation that led to his arrest in Honduras on May 6, 2024 is also substantial, the facts supporting the charged offense are very straightforward. Cubillas was jointly involved in the

---

[7] <u>Kimbrough v. United States,</u> 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. 3553) (emphasis added).
[8] <u>Gall</u>, 552 U.S. at 47.
[9] <u>Rita v. United States,</u> 551 U.S. 338, 351 (2007) (citation omitted).
[10] <u>Gall</u> 552 U.S. at 49-50.

smuggling and distribution of large quantities of cocaine in Honduras, being responsible for its direction and diversion into the United States for its sale.

Specifically, the Government has evidence of two specific seizures of cocaine in Honduras: in March 2021 and February 2022. Cubillas played a direct role in the acquisition of the cocaine, being responsible for the cocaine being placed on trucks for distribution in the former incident, and being responsible for hiding the cocaine on his farmland in the latter offense. Cubillas does not deny that he has been engaged in such activities, as a part of the conspiracy, since at least 2015. However, this offense is not a violent one committed against another person. It is not a second or subsequent offense. Cubillas did not participate in the offense solely on his own, but participated with the other co-conspirators. And, there is no specific restitution that is owed to any specific person or place.

B. *The History and Characteristics of the Defendant, the Need to Protect the Public, and Deterrence.*

Defense counsel recognizes that the distribution of illegal substances in the United States is a multi-million-dollar enterprise, and that it takes significant manpower and resources both to engage in the trade, and for law enforcement agencies to combat it. This Court's sentence must, of necessity, be sufficient both to deter Cubillas from future illegal acts, as well as to send a message to the greater community of the consequences of such behavior, as set forth in 18 U.S.C. § 3553(a)(2).

However, there are several factors about Cubillas that should limit the court's inclination to impose a sentence like that recommended by the guidelines, which is far out-of-proportion for an individual like Cubillas.

First, Cubillas has no prior criminal record, either in the United States or in Honduras. While it is true that he has been part of this specific illegal enterprise for some time, he has not

10

extended his actions to other illegal activities. He has not committed any acts of violence, nor does the government have any evidence of any such actions. Therefore, any sentence this court imposes should reflect only his knowing involvement in the conspiracy, but nothing more.

Second, Cubillas is now 53 years old. Studies in criminology have shown that most individuals age out of crime as they become older.[11] See Exhibit 2. Even a sentence as short as the lowest the statute allows, 10 years, would still have Cubillas in his sixties by the time of his release. Given that Cubillas is no longer a young man, he asks the court to limit its sentence to one in which he may reasonably look forward to completing. In particular, Cubillas has expressed an overwhelming desire to see his family. As the support of family is a very strong factor against recidivism, a shorter sentence would provide Cubillas with a second chance of seeing his family again.

While Cubillas' does not dispute the seriousness of his actions, neither can the government allege, as an aggravating factor, that his actions directly caused harm to any known individuals. Cubillas was not a "street level" dealer, and never performed hand-to-hand sales of cocaine to known users. The need to protect the public specifically from Cubillas' actions is therefore quite low. The ten-year mandatory minimum sentence is adequate to protect the public, particularly since none of Cubillas' actions occurred on U.S. soil, and because Cubillas is no longer able to engage with the same offenders that he previously worked with to commit this offense.

Cubillas is also extremely likely to be deported upon the completion of his sentence, regardless of its length. A felony conviction for such a serious offense provides no grounds for

---

[11] "Recidivism Rates: What You Need to Know." Council on Criminal Justice. "Older people return to prison at lower rates. The new BJS data underscore one of the most well-established facts in criminology: that people 'age out' of crime. People released at age 24 or younger were 64% more likely to be reincarcerated at year five (56.8%) than those released at age 40 or older (36.3%)." https://counciloncj.org/recidivism_report/, last accessed 3/23/25.

non-removal under current immigration law. Also, as Cubillas has never been to the United States before, even when he was at liberty, a lengthier sentence to ensure that he does not commit another offense in this country is unnecessary. Additionally, Cubillas' conviction compromises his position within the greater enterprise, and therefore he has no ability to return to his former activities. Even if he could, Cubillas has expressed no interest in doing so, and wishes to use his conviction as a legitimate reason to end his activities.

C. *Avoiding sentencing disparities.*

With respect to 3553(a)(6), the need for this court to avoid unwarranted sentencing disparities, Cubillas' co-defendant, Edgardo Rene Velasquez Navarro, was sentenced by this court on March 11, 2025, and received a total sentence of 144 months, upon the same offense. See case no. 1:23-cr-00142-LMB-3. A similar sentence for Cubillas would be both congruent and keeping with the requirements of the statute, as both defendants are part of the same conspiracy and have entered guilty pleas to the exact same offense.

A sentence two years less than that of Navarro would be appropriate in this case, not just for the reasons listed above, but because Cubillas has the very strong support of not only his family, but also the members of his community in Honduras. This is displayed through the many character letters written in support of him, all of which come from either Cubillas' family, or his friends and neighbors in Honduras. See Exhibit 3. All the letters expressly detail Cubillas' dedication to his community, his love for his family, and the support he provides both to his friends and neighbors as well as that of his church. These letters detail Cubilla's life and character, the decent and responsible man he is, as separate from his illegal activities. This court should place great emphasis on the representations of his community and his family, and not base its sentencing decision *solely* on his illegal acts.

12

## **CONCLUSION**

WHEREFORE the reasons stated above, the Defendant, MARIO RODOLFO MEJIA

CUBILLAS, respectfully asks this court to issue a downward variance from the sentencing

guidelines, and impose a sentence of ten years of incarceration, representing the mandatory

minimum sentence for this charge.

Respectfully Submitted,
MARIO RODOLFO MEJIA CUBILLAS
By Counsel


PATRICK N. ANDERSON & ASSOCIATES, P.C.

_____/s/_____
Willie A. Mejia, Esquire (VA Bar #93669)
*Counsel for Defendant.*
Patrick Anderson & Associates
333 N. Fairfax Street, Suite 310
Alexandria, VA 22314
Phone: (703) 519-7100
Fax: (703) 519-7104
Email: wmejia@pnalaw.com


_____/s/_____
Jessica A. Richardson, Esquire (VA Bar #90158)
*Counsel for Defendant.*
Patrick Anderson & Associates
333 N. Fairfax Street, Suite 310
Alexandria, VA 22314
Phone: (703) 519-7100
Fax: (703) 519-7104
Email: jrichardson@pnalaw.com

13

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2025, I electronically filed this Sentencing Memorandum with the Clerk of the Court for the US District Court for the Eastern District of Virginia, through the CM/ECF system, which will send a notification of such filing to the United States Attorney's Office:

Philip Alito
DOJ-USAO
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Email: philip.alito@usdoj.gov

PATRICK N. ANDERSON & ASSOCIATES, P.C.

_____/s/_____

Willie A. Mejia, Esquire (VA Bar #93669)
*Counsel for Defendant.*
Patrick Anderson & Associates
333 N. Fairfax Street, Suite 310
Alexandria, VA 22314
Phone: (703) 519-7100
Fax: (703) 519-7104
Email: wmejia@pnalaw.com

_____/s/_____

Jessica A. Richardson, Esquire (VA Bar #90158)
*Counsel for Defendant.*
Patrick Anderson & Associates
333 N. Fairfax Street, Suite 310
Alexandria, VA 22314
Phone: (703) 519-7100
Fax: (703) 519-7104
Email: jrichardson@pnalaw.com